UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-cv-22413-GAYLES

MADELINE CLODFELTER,

    Plaintiff,

        v.

MIAMI-DADE COUNTY,

    Defendant.

    _____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant's Motion for Summary Judgment (the "Motion"). [ECF No. 15]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## BACKGROUND

Plaintiff began working for Defendant on July 21, 1986. From 2014-2018, she served as Fire and Rescue Division Manager (the "Division Manager")[1] for Defendant's Fire Rescue Department ("MDFR"). During that time, Scott Mendelsberg ("Mendelsberg") was Plaintiff's direct supervisor and David Downey ("Chief Downey") was the MDFR chief. Chief Downey had the authority to hire and fire employees.

---

[1] Based on the record, the Fire & Rescue Division Manager was MDFR's Human Resource Division Manager. In discussing Plaintiff, the parties use those titles interchangeably. For purposes of this Order, the Court refers to Plaintiff's position as the Division Manager.

*Plaintiff Resigns*

On March 25, 2018, Plaintiff sent an email to MDFR Personnel Staff stating:

> I have decided to retire effective end of business day on April 6th. Meanwhile, I'll be using my leave. I would like to thank you for your service. I will be dropping by on April 6th to complete the paperwork. See you then.

[ECF No. 14-2 at 53]. The same day, Plaintiff drafted and signed a memorandum addressed to Chief Downey, copying Mendelsberg, and stating in pertinent part:

> [E]ffective end of business day, April 6, 2018, I will like to inform you that I am retiring from county service. I plan to use my leave until then. On April 6th, I will come in to complete all required paperwork.

[ECF No. 14-2 at 56]. Plaintiff left the March 25, 2018 memorandum underneath the door of Chief Downey's office, where he found it the next morning. Chief Downey was "completely blindsided" by Plaintiff's decision to retire. [ECF No. 14 ¶ 16].

*Plaintiff Decides to Participate in DROP*

On March 26, 2018, the day after Plaintiff submitted her resignation letter, she signed and notarized a Florida Retirement System Pension Plan Notice of Election to Participate in the Deferred Retirement Option Program (DROP)[2] and Resignation of Employment (the "Notice of Election"). [ECF No. 14-1 at 130]. Pursuant to the Notice of Election, Plaintiff's DROP would begin March 1, 2018, and her DROP termination and resignation date would be February 28, 2023.

The next day, Plaintiff drafted and signed a second memorandum to Chief Downey stating:

> This is to inform you that based on conversations that I have had in the last couple of days with several other executive level County personnel, and also a conversation that Scott and David had yesterday, I have decided to DROP, effective March 30, 2018 and take leave while I look for another position in Miami-Dade County, instead of abruptly retiring. Meanwhile, I have been and will continue

---

[2] "[T]he Deferred Retirement Option Program, hereinafter referred to as DROP, is a program under which an eligible member of the Florida Retirement System may elect to participate, deferring receipt of retirement benefits while continuing employment with his or her Florida Retirement System employer. The deferred monthly benefits shall accrue in the Florida Retirement System on behalf of the member, plus interest compounded monthly, for the specified period of the DROP participation, as provided in paragraph (c). Upon termination of employment, the member shall receive the total DROP benefits and begin to receive the previously determined normal retirement benefits. . . ." Fla. Stat. § 191.091(13).

2

> assisting Maria Jose as needed and will be available to testify, as required, in any pending cases that I have been working on with the County Attorney's Office. When working, I will contact payroll via email so they can change the PAR to report my hours worked.

[ECF No. 14-1 at 129].[3]

In response, on March 29, 2018, Chief Downey emailed Plaintiff a letter stating in pertinent part:

> I am in receipt of your letter dated March 27, 2018. In the letter you advised me of your intentions to DROP effective March 30, 2018, and to take leave while "I look for another position in Miami-Dade County." Based on your initial resignation memorandum dated March 25, 2018, and your intentions as stated in this recent letter, I will assume you no longer wish to serve as the department's Human Resource Division Manager.
>
> I have appointed Maria Jose as the Acting Human Resource Division Manager effective March 26, 2018, and until further notice. In this capacity she has been directed to assume all duties and responsibilities previously assigned to you. I am hereby directing you to no longer work as, or respond in, the capacity of the department's Human Resource Division Manager. While I appreciate your willingness to "assist Maria Jose as needed" the request for assistance must come from Ms. Jose and cannot be unsolicited. I'm sure you can understand that our personnel can only report/respond to one Manager and for the time being, that will be Maria Jose. Again, I ask that you no longer respond to emails or other requests as the Human Resource Division Manager but rather immediately forward any requests to Maria Jose.
>
> As for your intentions to take leave, as you know, any leave which exceeds one pay period, either intermittent or continuous must be documented as FMLA/LOA. If you intend to exceed that parameter, you must submit for the FMLA/LOA. Any work performed during this leave period must be reported to Maria Jose who will manage your PAR.
>
> I want to assure you that I will assist in any way possible to help with your reassignment and am always available to speak should you want to reach out. I trust that this issue can be resolved as soon as possible however, in the meantime it is my responsibility to ensure we can continue to operate our Human Resource Division.

---

[3] The "David" in the memo is Plaintiff's husband, David Clodfelter, who is also an employee of Defendant.

[ECF No. 14-2 at 63]. In an emailed response, Plaintiff acknowledged receipt of the letter and indicated that she would be making an appoinment to see her doctor to complete the required Family Medical Leave Act ("FMLA") paperwork. She did not directly respond to Chief Downey's stated assumption that she no longer wished to serve as the Division Manager.

*Plaintiff's FMLA Leave*

Plaintiff suffers from migraines. On April 12, 2018, Plaintiff's physician certified that Plaintiff had a chronic medical condition that commenced in 2002 and that Plaintiff's symptoms were intermittent and could periodically prevent her from performating her job functions. On April 30, 2018, Chief Downey approved Plaintiff's request for FMLA leave. On May 7, 2018, Plaintiff was notified that her request for an intermittent leave of absence under the FMLA had been approved for the time period April 9, 2018, to June 29, 2018.

*Plaintiff's Removal from MDFR*

On June 14, 2018, Maria Jose, the then Acting Administrative Services Manager, emailed Plaintiff regarding her "PAR" hours for approval.[4] That same day, in a brief emailed response, Plaintiff confirmed that her hours "look[ed] good" and added: "FYI: Returning to work Monday, July 2nd." [ECF No. 14-2 at 54]. Chief Downey was copied on Plaintiff's emailed response.

On July 2, 2018, Plaintiff met with Chief Downey, Mendelsberg, and Maria Jose and was told that she was being removed from her position as Division Manager for the good of MDFR. Chief Downey also provided Plaintiff with a letter which stated that she was being removed "from her current exempt position as Fire and Rescue Division Manager . . . effective Friday, July 6, 2018." [ECF No. 14-1 at 139]. The letter noted that (1) Plaintiff had classified service rights to exercise to another county position, (2) she would receive written notification of her new

---

[4] Although not defined by the parties, it appears that PAR hours are the hours Plaintiff worked while on leave.

assignment from Human Resources, and (3) in the interim she would be granted administrative leave until July 6, 2018. The letter did not provide a reason for Plaintiff's removal.[5] At his deposition, Chief Downey testified that he made the decision to remove Plaintiff from the Department because she expressed the intent to no longer work in MDFR. At the meeting, Plaintiff did not tell Chief Downey that she wanted to remain in her position.

Upon completing her FMLA leave, Defendant placed Plaintiff in a new position as a Special Project Administrator 1 in the Department of Transportation and Public Works. The new position paid less and entailed less responsibility.

### *Chief Downey and the FMLA*

During the time Chief Downey led MDFR, other employees were granted FMLA leave. There is no evidence in the record that Chief Downey retaliated against any other employees for taking FMLA leave. At his deposition, Chief Downey testified that he believes Plaintiff had the right to apply for FMLA leave and that his decision to remove her from MDFR had nothing to do with her FMLA leave. Plaintiff testified that during her tenure with MDFR, Chief Downey demonstrated an antipathy towards FMLA leave, in particular FMLA leave for fathers of newborn children.

### *Procedural History*

On June 11, 2020, Plaintiff filed this action against Defendant alleging it violated the FMLA by retaliating against her for exercising her right to take FMLA leave (Count I) and

---

[5] On June 17, 2018, Chief Downey drafted a letter notifying Plaintiff that her services were no longer needed at MDFR. In that draft letter, Chief Downey noted that based on her initial resignation and later decision to drop, Plaintiff "no longer wished to serve as MDFR's Human Resources Division Manager." [ECF No. 14-2 p. 60]. Plaintiff did not receive this draft of the letter.

interfering with her FMLA rights (Count II). [ECF No. 1]. Defendant has now moved for summary judgment on all counts.

## DISCUSSION

**I.      Summary Judgment**

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curium) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## II.     Claims Under the FMLA

Congress enacted the FMLA in 1993, in part, to address "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods[.]" 29 U.S.C. § 2601(a)(4). The FMLA grants eligible employees up to twelve weeks of unpaid leave annually for several reasons including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "The Act creates a private right of action to seek equitable relief and money damages against employers who 'interfere with, restrain, or deny the exercise of or the attempt to exercise' FMLA rights." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 429 F.3d 1286, 1293 (11th Cir. 2006) (quoting 29 U.S.C. §§ 2615(a)(1), 2617(a)).  Specifically, the FMLA "creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Id*. at 1293 (internal quotations omitted). Here, Plaintiff raises claims for both interference and retaliation.[6]

### A.     Interference

To establish an interference claim, "an employee must demonstrate that he was denied a benefit to which he was entitled under the FMLA." *Martin v. Brevard County Public Schools*, 543 F. 3d 1261, 1266-67 (11th Cir. 2008). One benefit, relevant here, is the right "'to be restored by the employer to the position of employment held by the employee when the [FMLA] leave commenced' or to an equivalent position." *Id.* (quoting 29 U.S.C. § 2614(a)(1)(A)). For an

---

[6] Defendant argues that Plaintiff is not entitled to leave under the FMLA and that, therefore, both of her claims necessarily fail. Because the Court finds that Defendant could have lawfully denied Plaintiff reinstatement to her position even if she had not been on FMLA leave, it does not address whether Plaintiff had a medical condition that entitled to her to FMLA leave.

interference claim, "[a]n employee need not 'allege that his employer intended to deny the right; the employer's motives are irrelevant.'" *Id.* (quoting *Strickland v. Water Works and Sewer Bd. of Birmingham*, 239 F. 3d 1199, 1208 (11th Cir. 2001)).

This right, however, is not absolute. "[A]n employer can deny reinstatement 'if it can demonstrate that it would have discharged the employee had he not been on FMLA leave.'" *Id.* (quoting *Strickland*, 239 F.3d at 1208). *See also Shannon v. Nat'l R.R. Passenger Corp.*, 774 F. App'x 529, 545 (11th Cir. 2019) ("Similarly, an employer is not liable for failing to reinstate an employee after she has taken FMLA leave if it can show that it refused to reinstate her for a reason unrelated to FMLA leave."); *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 n. 1 (11th Cir. 2000) (in interference claim, "employer bears the burden of proving that the employee would have been laid off during the FMLA period for reasons unrelated to the [FMLA leave], and therefore is not entitled to restoration").

While Plaintiff was not reinstated to her position as Division Manager, the evidence is clear that Chief Downey's actions were unrelated to Plaintiff's FMLA leave. Before taking her FMLA leave, Plaintiff repeatedly notified Chief Downey that she no longer wished to remain with MDFR. First, Plaintiff abruptly resigned. Then, when she decided to enter DROP instead, Plaintiff expressly stated that she would take leave while she looked for another position with Miami-Dade County. When Chief Downey told Plaintiff on March 29, 2018, that he assumed Plaintiff no longer wished to serve as the department's Division Manager, Plaintiff never challenged his assumption. Indeed, Plaintiff never told Defendant that she intended to return to her prior position as Division Manager. Based on this record, it is clear that Chief Downey removed Plaintiff from her prior position because that is exactly what she requested. After unequivocally telling Chief Downey that she intended to work in a different position after returning from FMLA leave, Plaintiff cannot now

argue FMLA interference. Accordingly, Defendant is entitled to summary judgment on Plaintiff's FMLA interference claim.

### B. Retaliation

Unlike an interference claim, to establish an FMLA retaliation claim, an employee must prove "that his employer *intentionally* discriminated against him for exercising an FMLA right." *Martin*, 543 F.3d at 1267 (emphasis in original). Where, as here, direct evidence of retaliatory intent is lacking, the Court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under that approach, an employee claiming FMLA retaliation must show that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Martin*, 543 F.3d at 1268. If the employee establishes a *prima facie* case of retaliation, "the burden shifts to the employer 'to articulate a legitimate reason for the adverse action.'" *Id.* (quoting *Hurlbert*, 439 F.3d at 1297). If the employer is able to articulate a legitimate reason, the burden shifts back to the employee "to show that the employer's proffered reason was pretextual by presenting evidence 'sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Id.* (quoting *Hurlbert*, 439 F.3d at 1298).

Plaintiff contends that Defendant retaliated against her for taking FMLA leave by demoting her, reducing her salary, and refusing to restore her to her prior or an equivalent position when she returned from FMLA leave. With respect to Plaintiff's *prima facie* face, Defendant argues that Plaintiff fails to establish that the decision to remove her from her position was causally related to the protected activity. The Court agrees. As set forth above, Plaintiff told Chief Downey that she was retiring as Division Manager and that she wanted another position with the County after

returning from FMLA leave. While Chief Downey finalized his decision to remove Plaintiff as Division Manager just after her FMLA leave ended, this temporal proximity, without more, is insufficient to establish causation. *See Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (holding that temporal proximity between decision to terminate the plaintiff and her FMLA leave—without more—was insufficient to establish the causation element of the plaintiff's *prima facie* case).

Even if Plaintiff had adduced enough evidence to establish a *prima facie* case, Defendant has proffered a legitimate reason for removing Plaintiff from her position: Plaintiff's expressed desire to seek a position elsewhere. The burden thus shifts to Plaintiff to establish pretext. Plaintiff attempts to do so by pointing to (1) the temporal proximity between Defendant's decision to remove her from her position and her return from FMLA leave and (2) Chief Downey's purported disdain for FMLA leave. For the reasons previously discussed, the temporal proximity of Plaintiff's formal removal as Division Manager to her return from FMLA leave is insufficient, alone, to create a jury question as to pretext. *See Wascura*, 257 F.3d at 1244-45. Moreover, Plaintiff's stated intent to leave her current position and look for another position with Miami-Dade County undermines the significance of any temporal proximity between her removal and her FMLA leave. Further, the only evidence of Chief Downey's purported disdain for FMLA leave is Plaintiff's self-serving statement. However, there is no evidence in the record to suggest that Chief Downey ever denied an employee FMLA leave or had a problem with Plaintiff taking FMLA leave. Accordingly, Plaintiff cannot meet her burden, and Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## **CONCLUSION**

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment is **GRANTED.** The Court will enter a separate judgment in favor of Defendant in accordance with Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of December, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE